TO THE ABOVE NAMED DEFENDANTS:

You are hereby summoned and required to serve upon the plaintiff's attorney an answer to the complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: October 24, 2016
       Troy, New York

Respectfully submitted,

E. STEWART JONES HACKER MURPHY, LLP

James E. Hacker, Esq.
Attorney for Plaintiffs
28 Second Street
Troy, New York 12180
(518) 274-5820

and

REGER RIZZO AND DARNALL LLP
Of Counsel
Attorneys for Plaintiffs
Cira Centre, 13th Floor
2929 Arch Street
13th Floor
Philadelphia, PA 19104
hchernow@regerlaw.com
215-495-6532

Trial is desired in the County of Schenectady. The basis of venue designated above is that plaintiff resides in the County of Schenectady, State of New York.

STATE OF NEW YORK
SUPREME COURT      COUNTY OF SCHENECTADY

---

DAVID LEON and D.T.L. ENTERPRISES, LLC,

               Plaintiffs,

     -Against-

ECP-PF: NY OPERATIONS (EAST), LLC,
ECP-PF HOLDINGS GROUP, INC.,
ECP-PF: NY OPERATIONS (WEST), LLC,
ECP-PF: ARIZONA, LLC,
ECP-PF: CANADA, LLC,
ECP-PF: CT OPERATIONS, INC. and
ECP-PF: NM OPERATIONS, INC.,
,
               Defendants.

---

**VERIFIED
COMPLAINT**

Index No.: 2016-2393

Date Filed: 10-26-16

Plaintiffs David Leon ("Mr. Leon") and D.T.L. Enterprises, LLC ("DTL"), by and through their attorneys, E. Stewart Jones Hacker Murphy, LLP, as and for a Complaint against the defendants allege the following:

## I.    SUMMARY OF THE LAWSUIT

1.     Although structured in a complex fashion involving numerous moving parts, at its core, the transaction which is the subject of this lawsuit involves the sale of several Planet Fitness ("PF") franchises and PF area development rights in New York. Those franchises and area development rights formerly were owned through corporate entities by Mr. Leon and, in some cases, jointly owned with a Mr. Robert Morris ("Mr. Morris"). The purchaser was ECP-PF Holdings Group, Inc., a/k/a ECP-PF Holdings Group LLC ("Holdings"), through its corporate affiliates. The terms of the sale were such that Mr. Morris would "cash out" his investment in

the PF franchises co-owned with Mr. Leon. Mr. Leon, on the other hand, was to continue in the business. Payment for his interests was partially in cash and partially in equity interests in various corporate affiliates of Holdings that operated PF franchises. Mr. Leon was employed as the head of Holdings' New York PF operations and was to share in the growth of both Holdings and its affiliates' PF operations, not only in New York, but throughout the United States and Canada, through the exercise of the area development rights sold by Mr. Leon, additional area development rights of Holdings and area development rights to be secured by Holdings or its affiliates from PF after closing on the transaction. Holdings has sought to deny Mr. Leon the opportunity to share in that growth and failed to pay to him wages and other benefits to which he is entitled by purporting to terminate his employment without cause and asserting that, by such involuntary termination, he has "forfeited" his right to share in future growth. The growth rights secured to Mr. Leon under the documents evidencing this transaction, especially an employment agreement, are not subject to forfeiture and continue whether or not Mr. Leon remains employed and regardless of the reason for termination of his employment. Mr. Leon brings this lawsuit to vindicate those rights and to secure wages and other benefits to which he is entitled under the Employment Agreement which have been wrongfully withheld from him.

## II.    PARTIES

2.    Mr. Leon is an individual, *sui juris*, with an address as set forth beneath his name in the caption of this Complaint.

3.    D.T.L. Enterprises, LLC ("DTL") is a limited liability company organized under the laws of New York with an address as set forth beneath its name in the caption of this Complaint. DTL is wholly owned by Mr. Leon.

4. ECP:PF: NY Operations (East), LLC ("ECP East") is a limited liability company organized under the laws of Delaware with an address as set forth beneath its name in the caption of this Complaint.

5. ECP-PF: NY Operations (West), LLC ("ECP West") is a limited liability company organized under the laws of Delaware, with an address as set forth beneath its name in the caption of this Complaint.

6. ECP-PF: NY Operations, Inc. ("Operations") is a corporation organized under the laws of Delaware, with an address as set forth beneath its name in the caption of this Complaint.

7. ECP-PF: Arizona, LLC ("Arizona") is a limited liability company organized under the laws of Delaware, with an address as set forth beneath its name in the caption of this Complaint.

8. ECP-PF: Canada, LLC ("Canada") is a limited liability company organized under the laws of Delaware, with an address as set forth beneath its name in the caption of this Complaint.

9. ECP-PF: CT Operations, LLC ("CT") is a corporation organized under the laws of Delaware, with an address as set forth beneath its name in the caption of this Complaint.

10. ECP-PF: NM Operations, LLC ("NM") is a corporation organized under the laws of Delaware, with an address as set forth beneath its name in the caption of this Complaint.

11. Holdings is a corporation organized under the laws of Delaware and is believed to be the direct or indirect parent company of, or otherwise affiliated with, ECP East, ECP West, Arizona, Canada, Operations, CT and NM with an address as set forth beneath its name in the caption of this Complaint.

## III.   STATEMENT OF FACTS

12.    For many years, Mr. Leon owned and successfully operated 17 PF franchises in New York State.  Eleven of Mr. Leon's PF franchises were located in the Albany-Schenectady areas ("East Clubs") and 6 were co-owned with Mr. Morris in the Rochester, New York area ("West Clubs").  Mr. Leon became highly successful and greatly respected as a PF franchise operator and had contractual rights from PF to expand his PF operations.

13.    Each of the respective clubs owned by Mr. Leon or Mr. Leon and Mr. Morris was owned by a separate New York limited liability company.  The limited liability companies that owned the East Clubs were wholly owned by Leon and are listed on *Exhibit A* attached hereto ("East LLCs").  The limited liability companies that owned the West Clubs were owned jointly by Mr. Leon and Mr. Morris and are also listed on Exhibit A ("West LLCs", collectively with East LLCs, the "Selling LLCs").

14.    On or about October 17, 2014, ECP East entered into that certain Asset Purchase and Contribution Agreement by and among ECP East on the one hand, and, on the other hand, Mr. Leon and the East LLCs ("East Agreement").  Pursuant to the East Agreement, ECP East agreed to purchase 85% of the East LLCs' assets for cash and the East LLCs agreed to contribute the remaining 15% of their assets to ECP East in exchange for Mr. Leon obtaining a 15% equity interest in ECP East.  The assets sold by the East LLCs included, without limitation, the area development rights to expand their PF operations.  A true and correct copy of the East Agreement is attached hereto as *Exhibit B*.

15.    On or about November 21, 2014, ECP West entered into that certain Asset Purchase and Contribution Agreement by and among ECP West on the one hand, and, on the other hand, Messrs. Leon and Morris and the West LLCs ("West Agreement").  Pursuant to the

West Agreement, ECP West agreed to purchase 85% of the West LLCs' assets for cash and the West LLCs agreed to contribute the remaining 15% of their assets to ECP West in exchange for Mr. Leon obtaining a 15% equity interest in ECP West. The assets sold by the West LLCs included, without limitation, the area development rights to expand the PF operations. A true and correct copy of the West Agreement is attached hereto as *Exhibit C*.

16.    Upon closing of the transactions contemplated by the ECP East and West Agreements, Mr. Leon (or his affiliated entities) received his portion of the cash payment equal to 85% of the total purchase price for the purchase of the assets and, in addition to that cash purchase price, ownership of 15% each of ECP East and ECP West. (Hereinafter, the East Agreement and the West Agreement will collectively be referred to as the "Agreements"). Mr. Morris received his portion of the cash payment and had no further involvement with the parties.

17.    Upon the closing, the 15% equity in ECP East and ECP West that was issued as part of the purchase price and the transactions described above were assigned by Mr. Leon to DTL.

18.    Prior to closing on the Agreements, Mr. Leon, through the Selling LLCs, owned substantial area development rights with PF, pursuant to which rights Mr. Leon had the ability to substantially grow the number of PF franchise locations in New York State.

19.    Holdings informed Mr. Leon that it was desirous of expanding its PF franchise footprint in New York and elsewhere, including the areas where Mr. Leon had operating PF locations and the areas in which Mr. Leon had area development rights, specifically the eastern and western parts of New York.

20.    Holdings advised Mr. Leon that a material inducement to Holdings to cause ECP East and ECP West to enter into the Agreements was the opportunity to take advantage of Mr.

Leon's area development rights. Additionally, Holdings advised Mr. Leon that it intended that ECP East, ECP West, Holdings, and/or other affiliates of them, would secure additional area development rights from PF in which Mr. Leon would share as an equity owner.

21. A material inducement to Mr. Leon to enter into and to cause the Selling LLCs to enter into the Agreements was Holdings' representations that it, ECP East and/or ECP West could and would provide capital to ECP East, ECP West and other of their affiliates which would enable those entities to take advantage of area development rights so that additional PF locations could be opened in New York state and elsewhere. The additional PF locations would increase the value of DTL's (i.e. Mr. Leon's) equity interest in ECP East, ECP West and their other affiliates, in anticipation of a later sale of those entities to a third party.

22. Pursuant to the agreements evidencing the transaction, Holdings (directly or through one or more affiliates) was required to commit capital and resources so that the number of locations in each area would be expanded, thus increasing the value of the equity interest with the goal that the entities would be sold for a higher value. Upon information and belief, Holdings has not contributed capital to either ECP East or ECP West, but only debt financing, which , if true, renders Mr. Leon the sole owner of ECP East and ECP West.

23. The Defendants represented to Mr. Leon that they were desirous of obtaining additional development rights outside New York and developing those territories by building PF franchise locations. An integral part of the transactions described above was that Mr. Leon was promised and given non-defeasible rights to participate in all additional territories.

24. In view of the parties' seemingly common goal of expansion, the Agreements were structured so that the purchase price for the assets was paid to Mr. Leon in such a way that Mr. Leon was paid a lower multiple of earnings than he otherwise would have accepted and he

received only a portion of the purchase price in cash. He received the balance of the purchase price in the form of equity interests in ECP East and ECP West, through which he was to participate in the growth of the business both inside the state of New York and outside by acquiring and developing new territories (the "Growth Portion").

25.     As part of the transaction embodied in the Agreements, and to assure that Mr. Leon would receive the Growth Portion, ECP East and Mr. Leon entered into an Executive Employment Agreement having a four year term, dated as of November 26, 2014, a true and correct copy of which is attached hereto as *Exhibit D* (the "Employment Agreement"), the financial terms of which are guaranteed by Holdings.

26.     Pursuant to the Employment Agreement, Mr. Leon is guaranteed a salary and benefits. In addition, Paragraph 3(d) of the Employment Agreement provides, *inter alia*, that Mr. Leon would have the non-defeasible right to receive, without additional payment, 20% ownership of every Affiliate (a defined term) of ECP East that acquired the rights to new PF territories. Such rights specifically included a direct ownership interest in each new club, location, or unit established or developed in New Territories (a defined term) if Mr. Leon had material involvement in assisting in the New Territories. Section 3(d) of the Employment Agreement expressly provides Mr. Leon's right to a 20% interest in all Affiliates is unconditional and survives and continues in full force notwithstanding the expiration or termination of the Employment Agreement, whether with or without cause. This provision of the Employment Agreement existed for the specific purpose of assuring that Mr. Leon would receive the Growth Portion under the Agreements, regardless of his employment with ECP East, because the Growth Portion was part of the consideration for Mr. Leon's sale of the Selling LLCs.

27.     The Employment Agreement is an integral part of the overall transaction because, among other duties, it gives to Mr. Leon specific responsibility to generate growth in a number of PF territories, both within and without New York including, without limitation, Canada and Arizona. It was critical to Mr. Leon that he have such responsibilities because the Growth Portion of the purchase price for the Selling LLCs was a material inducement for him to enter into the transaction. Although the Employment Agreement was specifically with ECP East, Mr. Leon's duties encompassed not only all of New York state (i.e. ECP East and ECP West), but development duties in other territories, including, without limitation, Arizona and Canada. Specifically, and without limitation, the Employment Agreement provided that:

    a.    During the period of Mr. Leon's employment, he was to serve as President of the New York region "which includes all Planet Fitness Clubs owned by the Company *and its affiliates* in the State of New York" (emphasis supplied);

    b.    Mr. Leon was responsible for sales and EBITDA growth objectives;

    c.    Mr. Leon was responsible for assuring superior member service, customer retention and management of club locations, at both existing and new club locations;

    d.    Mr. Leon was responsible for opening new clubs;

    e.    Mr. Leon was responsible for brand excellence of all clubs owned by the Company *and its affiliates*;

    f.    Mr. Leon was responsible for reviewing architect plans, site location process, *adding new territories, opening new locations and managing the development process with respect to same*;

    g.    Mr. Leon was responsible for rendering administrative, financial and other executive and managerial services to the Company *and its affiliates*.

28.     Immediately upon entering into the office of President of the New York region, in fulfillment of his obligations under the Employment Agreement as discussed above, and in furtherance of what Mr. Leon was told was the common goal of all of the parties to grow the number of PF franchises, both within and outside New York, Mr. Leon diligently undertook to accomplish the following: (i) increasing the number of franchise locations by visiting many potential sites for new club locations; (ii) determining the appropriateness of such sites; (iii) entering into discussions and negotiations with potential landlords for site locations; (iv) producing 6 leases and 1 letter of intent for new locations which, based on his many years of experience, Mr. Leon knew to be valuable new locations; (v) procuring from area development rights for Mohave County, Arizona and for the Provinces of Saskatchewan, British Columbia and Alberta, Canada; (vi) visiting both Canada and Arizona to determine new PF locations within those territories; and (vii) working with PF to garner goodwill for the new owners.

29.     Despite Mr. Leon's good faith efforts to carry out his obligations under the Employment Agreement and to grow the number of franchise locations and to manage the NY operations in a professional and businesslike manner, the Defendants, jointly and severally, intentionally obstructed Mr. Leon's efforts to manage the operations and to grow the number of PF franchises by the following non-exclusive methods:

    a.      Requesting Mr. Leon to make normal club disbursements from his own checking accounts until ECP East and ECP West accounts could be established. Holdings is an experienced operator of PF franchises, and there was no reason for it to not have bank accounts established as of the date of closing -- which was a date demanded by ECP East and ECP West. This practice of using Mr. Leon's personal funds for the operations of ECP East and ECP West continued for months after the closing. In fact, utilities were paid by the utility company withdrawing monthly payments from Mr. Leon's personal accounts because

Holdings failed and refused to notify the utility companies to draw from ECP East and ECP West accounts;

b. Deliberately failing to pay the required taxes and governmental charges, causing defaults, late fees and tarnishing Mr. Leon's reputation in the various communities;

c. Failing to pay many vendors, causing such things as beverages, cable TV, utilities and other necessary items for the operation of the PF clubs, to be shut off from service or distribution, even after ECP East and ECP West started paying vendors directly;

d. Placing PF clubs that had been sold in default with landlords, resulting in the imposition of late charges by those landlords and municipalities;

e. Failing to communicate with or include Mr. Leon in key operational issues, as well as convening meetings with individuals who reported to Mr. Leon under the terms of the Employment Agreement, without notifying Mr. Leon or involving him in those discussions. This led directly to miscommunications, employee frustration and the mismanagement of the clubs and organization;

f. Collecting all revenues generated by the PF clubs following closing on the Agreements, but refusing and failing for a lengthy period to pay expenses, forcing Mr. Leon personally to fund expenses, including payroll;

g. Failing to properly comply with PF specifications for processing "paid-in-full" members in violation of the Franchise Agreements and possible state and federal laws;

h. Failing to make payroll payments when and as due, creating morale problems in many of the clubs;

i. Failing to honor commitments made to employees to establish a 401(k), yet improperly withholding funds from employees' paychecks for nonexistent 401(k);

j. Failing to pay utilities, with the result that utilities were turned off to existing clubs;

12

k.     Failing to timely pay real estate taxes and other necessary operating expenses;

l.     Failing and refusing to maintain the clubs and club equipment up to par with PF's standards on maintenance, repair and housekeeping, thereby increasing the risk of personal injury to club members and causing them to either being or risk being in default under the franchise agreements; and

m.     Failing and refusing to provide Mr. Leon with financial information.

30.     Defendants' actions as described above caused 11 of the New York state clubs to be in default under franchise agreements with PF.

31.     Defendants engaged in the foregoing conduct with the specific intent of frustrating Mr. Leon's efforts to manage and grow the New York and other regions to, upon information and belief, avoid having to make the capital contributions the parties' agreements envisioned.

32.     Desirous of denying Mr. Leon his participation in the growth of ECP East, ECP West and their affiliates, and thereby denying him the Growth Portion of the purchase price under the Agreements, the Defendants, jointly and severally, entered upon a calculated campaign to prevent growth. Specifically, and without limitation, the Defendants engaged in the following conduct:

a.     Repeatedly disregarding franchisor-required promotional marketing programs;

b.     Delaying opening new clubs, including refusing to deal with or meet with prospective landlords for new locations which Mr. Leon had found;

c.     Failing to expand the territories which subjected ECP East, ECP West, Arizona and Canada (and Mr. Leon) to defaults under the PF franchisor Area Development Agreements, despite the fact that Mr. Leon provided numerous locations

13

in the different development areas for ECP East, ECP West, Arizona and Canada to be compliant with the expansion requirements, all of which would have been or were approved by PF;

d.     Ignoring marketing promotions and other dictates that were mandated by the PF franchisor and, in fact, causing New York locations to cease all marketing efforts. The cessation of marketing efforts negatively impacted revenue and EBITDA and, consequently, the value of Mr. Leon's equity interest; and

e.     Refusing, without cause, to "pull the trigger" and develop territories acquired in both Arizona and Canada, which were solely a result of Mr. Leon's efforts to procure extremely valuable development rights and also despite the fact that two limited liability companies were created supposedly to take advantage of these growth opportunities.

33.     On or about June 7, 2016, Mr. Leon was given an undated letter on the letterhead of Holdings stating that his employment with ECP East was terminated without cause and that as a result of such termination, his right to share in the future growth of ECP East, ECP West and their affiliates, Arizona and Canada, was "forfeited." A true and correct copy of the Notice of Termination of Employment is attached hereto as *Exhibit E* ("Notice"). By that Notice, the Defendants exhibit the mistaken belief that they could, and intended to, deprive Mr. Leon of a substantial portion of the Growth Portion and to attempt to deprive him of equity he has or is entitled to in Canada, Arizona and other affiliates under the Agreements and the Employment Agreement.

34.     Since June 7, 2016, ECP East and Holdings have failed and refused to pay Mr. Leon guaranteed salary and have excluded him from all benefit plans, including health insurance.

35.     The representation to Mr. Leon that the termination of his employment resulted in a forfeiture of growth potential and equity in current or future affiliates is directly contrary to paragraph 3(d) of the Employment Agreement, which provides that his growth participation

rights would survive termination of the Employment Agreement, whether termination of employment was with or without cause.

36.     By express language of paragraph 18 of the Employment Agreement, ECP East and its affiliates are required to obligate any successor to expressly acknowledge and agree in writing to assume ECP East and its Affiliates' obligations under the Employment Agreement to Mr. Leon. Accordingly, in the event the Defendants seek to sell any of the assets of Holdings, ECP East, ECP West, Arizona or Canada or any other Affiliate to a third party, such third party must honor the terms of the Employment Agreement, including, without limitation, the Growth Portion as expressed in paragraph 3(d) of the Employment Agreement.

37.     Pursuant to paragraph 19 of the Employment Agreement, the terms of the Employment Agreement could not be modified by any "provision of any employee manual, personnel policies, Company directives *or other agreement or document*" (emphasis supplied) unless specifically authorized by a provision of the Employment Agreement itself. No provision of the Employment Agreement authorizes a modification or termination of Mr. Leon's growth participation rights under the Employment Agreement by any subsequent agreement or document.

38.     Mr. Leon's right to share in 20% of the growth of ECP East *and all of its Affiliates* is perpetual, continues following termination of the Employment Agreement and continues after any sale by ECP East, ECP West (or any of their Affiliates) of any of their assets or business to any third party and is not dependent upon Mr. Leon's continued employment with ECP East or its Affiliates, whether that employment ends with or without cause.

39.     In view of the parties' agreements, Holdings and ECP East's termination of Mr. Leon's employment and assertion that he has "forfeited" rights in the growth opportunities of

15

ECP East and all of its affiliates, constitute an anticipatory breach of Mr. Leon's rights under the Employment Agreement to participate in the growth of ECP East and all of its Affiliates.

40.    At no time did Defendants have cause to terminate Mr. Leon's employment with ECP East. To the contrary, at all times subsequent to entering into the Employment Agreement, Mr. Leon performed admirably in both assisting in the merger of the assets he sold pursuant to the Agreements, and in attempting to grow the New York, Arizona and Canada territories.

41.    The Defendants' decision to terminate Mr. Leon, and to do so in a manner under a claim that he forfeited his growth opportunities, is an avaricious attempt by the Defendants to avoid paying to Mr. Leon the Growth Portion and full consideration owed to him under the Agreements and the Employment Agreement.

42.    At all times subsequent to closing under the Agreements and subsequent to execution of the Employment Agreement, Mr. Leon faithfully performed his duties and established no cause on the basis of which his employment could be terminated and, despite the intentional interference by the Defendants, produced 7 opportunities for opening new PF locations in the expansion territories, all of which the Defendants intentionally refused to take advantage.

## COUNT I
### MR. LEON V. HOLDINGS, ECP EAST, ECP WEST, ARIZONA, CANADA, CT AND NM
### DECLARATORY JUDGMENT

43.    Plaintiff incorporates paragraphs 1 through 42 above as if set forth *in extenso*.

44.    The Defendants named in this Count, and each of them, have attempted to disassociate themselves from Mr. Leon in a manner under which they claim that he has "forfeited" his right to participate in the growth of those Defendants prospectively.

45. The attempt of the Defendants named in this Count to disenfranchise Mr. Leon from the growth opportunities under the Agreements and his Employment Agreement of ECP East, ECP West, Arizona, Canada, CT and NM and all other existing or future Affiliates constitutes an anticipatory breach of the express terms of those agreements.

WHEREFORE, Mr. Leon requests that this Court enter a declaratory judgment finding: (i) that Mr. Leon is entitled to perpetually enjoy 20% growth in each of the Defendants named in this Count and all of their Affiliates established after the date of the Agreements and Employment Agreement, and that such right continues irrespective of any sale of ECP East or the assets or business of ECP East or any other Affiliate; (ii) that Mr. Leon's right under the Agreements and Employment Agreement is not limited to a 20% growth in an Affiliate, but includes a specific 20% interest in each new PF club, location, or unit established or opened by Holdings, ECP East, ECP West, all of their Affiliates and any successor entity irrespective of whether Mr. Leon had material involvement in assisting in any new territory in view of the Defendants preventing Mr. Leon from having such involvement; (iii) that in the event Holdings, East or any Affiliate of theirs seeks to sell the business or assets of Holdings, ECP East or any of their Affiliates, that Holdings, ECP East and all of their Affiliates shall require any purchaser thereof to acknowledge and assume in writing Mr. Leon's growth rights as above alleged; (iv) require Holdings to continue to guarantee Mr. Leon's growth rights pursuant to its obligation under the Employment Agreement; and (v) such other remedies that are just and proper under the facts.

## COUNT II
## MR. LEON V. ECP EAST, ECP WEST AND HOLDINGS
## FRAUD IN THE INDUCEMENT

46. Plaintiff incorporates paragraphs 1 through 45 above as if set forth *in extenso*.

47.     At the time Mr. Leon was negotiating in good faith the terms of the Agreements and Employment Agreement, it was never the intention of the Defendants named in this Count to honor the terms of those agreements.

48.     At the time Mr. Leon was negotiating in good faith the terms of the Agreements and Employment Agreement, it was always the intention of the Defendants named in this Count to not make required capital contribution to effectuate growth and to terminate the Employment Agreement with Mr. Leon, so as to deprive him of the opportunity to participate in the growth represented by the Growth Portion.

49.     Immediately after closing on the Agreements, the Defendants named in this Count instituted and carried out a calculated plan designed to make Mr. Leon's position with ECP East intolerable in the hope he would resign his employment under the Employment Agreement.

50.     When Mr. Leon refused to resign his employment with ECP East, the Defendants named in this Count determined to involuntarily terminate, without cause, Mr. Leon's employment with ECP East for the purpose of depriving him of his opportunity to participate in the growth of the Defendants named in this Count and other Affiliates.

51.     Depriving Mr. Leon of participation in substantial growth opportunities of various ECP entities was a scheme and plan of the Defendants named in this Count from the outset of discussions with Mr. Leon about entering into the Agreements.

52.     The Defendants named in this Count fraudulently induced Mr. Leon and the Selling LLCs to enter into the Agreements and Employment Agreement by making promises to Mr. Leon with regard to his participation in the growth of the Defendants named in this Count and their Affiliates, which promises they never intended to carry out.

53.     The representations to Mr. Leon that he would participate in the growth of the Defendants named in this Count and their Affiliates were material factors and inducements to Mr. Leon to enter into the Employment Agreement and Agreements.

54.     The representations made by the Defendants named in this Count regarding Mr. Leon's participation in future growth opportunities were false when made, were known to be false at the time made, were intended by the Defendants to be relied upon by Mr. Leon, were reasonably relied on by Mr. Leon and such reasonable reliance resulted in Mr. Leon sustaining substantial damages.

WHEREFORE, Mr. Leon requests that this Court determine that the Agreements are void *ab initio* and restore the parties to their *status quo ante* execution of the Agreements or, in the alternative, order that Mr. Leon (or his affiliates) shall participate fully in the equity opportunities under the Agreements and Employment Agreement, as if his employment had not been terminated and as if he had satisfied all other requirements for such participation.

**COUNT III**
**MR. LEON V. ECP EAST**
**BREACH OF CONTRACT**

55.     Plaintiff incorporates paragraphs 1 through 54 above as if set forth *in extenso*.

56.     Under the terms of the Employment Agreement, if Mr. Leon's employment with ECP East is terminated without cause, Mr. Leon is to continue to receive the salary due him under the Employment Agreement. From and after the date of the Notice, ECP East has failed to pay wages due Mr. Leon, ultimately in the amount of $625,000, plus health, medical, life, disability and group life insurance coverage for Mr. Leon and his family members and dependents ("Benefits"). By failing to pay Mr. Leon the wages and Benefits to which he is entitled under the Employment Agreement, ECP East has breached that Agreement.

57.    ECP East's failure and refusal to pay wages and Benefits due Mr. Leon under the Employment Agreement was and is willful.

58.    New York law implies a covenant of good faith and fair dealing with every contract, pursuant to which neither party may do anything that has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

59.    By refusing and failing to take advantage of the opportunities Mr. Leon developed to open new PF clubs and by terminating Mr. Leon's employment without cause, ECP East has breached its covenant of good faith and fair dealing and, thereby, denied Mr. Leon the opportunity to obtain a 20% interest in each new PF club and many others which he would have developed had that covenant not been breached.

WHEREFORE, judgment is demanded by Mr. Leon and against ECP East and Holdings in the amount of $625,000, plus Benefits and for an Order establishing Mr. Leon's entitlement to a direct 20% interest in all new PF clubs opened by ECP East or all of its Affiliates, together with attorneys' fees, costs, interest and such other damages and remedies as are available to Mr. Leon as a matter of law.

## COUNT IV
## MR. LEON V. HOLDINGS, ECP EAST, ECP WEST, OPERATIONS, ARIZONA, CANADA, CT AND NM
## BREACH OF CONTRACT

60.    Plaintiff incorporates paragraphs 1 through 59 above as if set forth *in extenso*.

61.    When the entities through which Mr. Leon and Mr. Morris operated the East Clubs and West Clubs entered into leases for space in which to operate (i.e. prior to the sale of their assets to ECP East and ECP West), Mr. Leon, Mr. Morris and their certain affiliate entities guaranteed the performance of the leases. The aggregate liability under those guarantees is many millions of dollars.

62.     As part of the transaction, pursuant to which Messrs. Leon and Morris sold their PF franchises, Holdings, on behalf of itself and along with many of its affiliated entities, entered into a certain Lease Guaranty and Indemnification Agreement ("Guaranty") dated as of March 17, 2015, a true and correct copy of which is attached hereto as *Exhibit F*.

63.     Under the Guaranty, Holdings, the other Defendants named in this Count and the other direct or indirect subsidiaries of Holdings identified in the Guaranty, represented and agreed to use their commercially reasonable efforts to accomplish the full release of any and all guarantors from the leases, including but not limited to Messrs. Leon and Morris.

64.     Despite demand since closing on the transactions pursuant to which Messrs. Leon and Morris conveyed the assets of their PF franchises to ECP East and ECP West, the Defendants named in this Count have not undertaken commercially reasonable efforts to accomplish the release of Messrs. Leon and Morris from their guarantees under those leases.

65.     As a result of such failure, Mr. Leon and Mr. Morris remain potentially liable for many millions of dollars of lease payments.

66.     As a result of the failure of the Defendants named in this Count to take commercially reasonable efforts to accomplish the full release of all lease guarantees by Messrs. Leon and Morris, such Defendants and their affiliates identified in the Guaranty are in breach of the Guaranty.

**WHEREFORE**, Mr. Leon demands judgment in his favor and against the Defendants named in this Count, jointly and severally, and requests that the Court order such Defendants to forthwith secure the release of all guarantees by Messrs. Leon and Morris or their affiliated entities or to place into escrow sufficient funds to satisfy all lease payments, as to which Mr. Leon, Mr. Morris or their affiliated entities have provided guarantees.

**WHEREFORE**, Mr. Leon demands judgment in his favor and against ECP East and Holdings in such amount as he shall prove at trial, together with attorneys' fees, costs, liquidated damages per the statute and such other relief as is available under law.

Dated: October 24, 2016
      Troy, New York

                Respectfully submitted,

                E. STEWART JONES HACKER MURPHY, LLP

                James E. Hacker, Esq.
                Attorney for Plaintiffs
                28 Second Street
                Troy, New York 12180
                (518) 274-5820

                and

                REGER RIZZO AND DARNALL LLP
                Of Counsel
                Attorneys for Plaintiffs
                Cira Centre, 13th Floor
                2929 Arch Street
                13th Floor
                Philadelphia, PA 19104
                hchernow@regerlaw.com
                215-495-6532

# VERIFICATION

STATE OF NEW YORK )
COUNTY OF SCHENECTADY ) ss.:

DAVID LEON, being duly sworn, deposes and says:

Deponent is the Plaintiff in the within action; Deponent has read the foregoing Complaint

and knows the contents thereof; that the same is true to Deponent's own knowledge, except as to

the matters therein stated to be alleged on information and belief, and as to those matters,

Deponent believes them to be true.

_____
DAVID LEON

Sworn to before me this
25 day of October, 2016
_____
Notary Public

SHARON S. NICHOLS
NOTARY PUBLIC for the
State of Montana
Residing at Helena, Montana
My Commission Expires
February 03, 2020
SEAL

DAVID LEON, being duly sworn, deposes and says:

Deponent is the owner of D.T.L. ENTERPRISES, LLC, the corporation named as

a Plaintiff in the within action; that deponent has read the foregoing Complaint and

knows the contents thereof; and that the same is true to deponent's own knowledge,

except as to those matters therein stated to be alleged upon information and belief, and as

to those matters deponent believes it to be true.

D.T.L. ENTERPRISES, LLC

By: _____
DAVID LEON
Title: Owner

Sworn to before me this
25 day of October, 2016
_____
Notary Public

SHARON S. NICHOLS
NOTARY PUBLIC for the
State of Montana
Residing at Helena, Montana
My Commission Expires
February 03, 2020
SEAL